[No. E001660. Fourth Dist., Div. Two. Nov. 24, 1986.]

In re the Marriage of MARY JO and FRANK ALEX RAMER.
MARY JO RAMER, Appellant, v.
FRANK ALEX RAMER, Respondent.

**COUNSEL**

Charles H. Carter for Appellant.

Michael H. Clepper for Respondent.

**OPINION**

**KAUFMAN, J.**—This is the second time this marital dissolution case has come before this court. Sadly, we observe the trial court has repeated and indeed exacerbated the abuses of discretion disclosed on the first appeal. The result is a continuing miscarriage of justice of which we have seldom seen the like.

On wife's first appeal we reversed the judgment in several respects and remanded the case to the trial court with directions to make certain determinations and appropriate orders. After a new trial limited to the issues

specified in our dispositional order, wife again appeals, contending: (1) she was entitled to a statement of decision and the statement issued by the trial court was inadequate; (2) the increase in the spousal support award from $550 per month to $900 per month was inadequate; (3) the trial court abused its discretion in permitting husband to pay off the arrearage on spousal support at the rate of $100 per month; (4) the trial court abused its discretion in refusing to hear wife's order to show cause for increased spousal support, child support and attorney's fees; (5) the trial court erred in refusing to permit wife to show she was entitled to a separate property credit of $5,800 against the family residence; (6) the court erred in ordering a payment of $5,066.62 to husband as an equalization payment upon sale of the family residence; (7) the court's order with respect to husband's civil service pension was erroneous and incomplete and the trial court should have divided the community property by awarding the family residence to wife and the husband's pension to husband with appropriate adjustments; and (8) the court erred in refusing to permit wife to produce evidence about various insurance policies and about a $10,000 loan she alleges was taken out by husband shortly before separation.

## Background Facts

The parties were married on August 22, 1959, and separated after about 22 years of marriage on June 18, 1981. There are four children of the marriage, two of whom were still minors at the time of the original trial on April 21 and July 9, 1982: Mary Shannon Ramer, born September 8, 1964, and Joseph Benjamin Ramer, born October 13, 1969. The original judgment filed September 20, 1982, ordered husband to pay $300 per month child support for each of the two children. However, Mary became 18 years of age on September 8, 1982, at which time child support for her terminated, so the child support order contained in the judgment was obsolete on the date it was issued.

On or about November 24, 1982, it was stipulated by the parties that husband would keep the children named on his group medical coverage through his employment so long as it was available and they were eligible for coverage. Subsequently, in about May 1985, in response to an order to show cause for child support, spousal support and attorney fees pending the present appeal, the monthly child support for Joseph was increased to $450 per month and has thereafter remained at that figure.

Joseph has a learning disability and as of April 1984 needed remedial schooling costing $247 per month. Wife included this expense as one of her expenses in her income and expense declaration dated September 14, 1984, submitted in connection with the trial on remand following the first appeal.

In 1963, approximately four years after the marriage, husband commenced employment as a federal civil service employee and has been so employed continuously ever since. As a federal employee husband is a participant in the federal civil service retirement program on account of which he is required to make monthly contributions from his pay. As of June 13, 1981, five days before the parties' separation, the contributions to the retirement system from husband's pay amounted to $28,356.60. Husband does not become eligible for longevity retirement until he reaches the age of 55[4] years, sometime in 1993. In the judgment following the original trial, the trial court declined to characterize, value or dispose of the federal civil service retirement rights. On remand the trial court determined that eighteen years, four months and seven days of husband's federal civil service employment were during the marriage and that the community property interest in retirement benefits should be calculated on that basis. However, the court declined presently to value the retirement rights and either to award the retirement benefits to husband with an offsetting award of the family residence to wife or to make any division of the retirement benefits.

At the time of the original trial the family residence was being occupied by wife, the two minor children and one or more of the parties' adult children. The court determined its value to be $80,000, subject to encumbrances consisting of first and second trust deeds having unpaid balances of $18,650 and $8,334.21, respectively, for a net value of approximately $53,000. The monthly payments on the two trust deeds totaled $517.90. The original judgment of September 20, 1982, gave wife the exclusive use of the family residence until October 1, 1982, but required that she make the first and second trust deed payments and that she pay the taxes and insurance. It provided the residence was to be sold and the net proceeds divided equally after the payment to husband of a sum equalizing the division of the community property unless wife should purchase husband's interest for $26,000 cash by October 1, 1982, or failing that, unless husband should purchase wife's interest at the same price within 30 days after October 1, 1982. The judgment on remand extended wife's right to occupy the family residence until Joseph reaches the age of 18, but thereupon the court ordered the residence sold and the net proceeds divided equally except that husband should first be paid $5,066.62 plus interest to equalize the division of the community property.

At the time of the original trial, husband had a gross monthly income of $3,881 and was paying federal income taxes of $1,008, state income taxes of $288, monthly retirement contributions of $271.71, and insurance (presumably medical) of $91.71, for a net disposable income of $2,221.99. By contrast, wife had not been gainfully employed during the marriage and was not employed at the time of separation or at the time of trial. Although

wife had nearly completed a four-year college education, the record indicated she possessed no special skills or training that would qualify her for remunerative employment and there was evidence she was not in good health. On those facts the court awarded wife the sum of $550 per month spousal support in the interlocutory judgment out of which she was ordered to pay the monthly installments on the trust deeds on the house in the amount of $517.90 together with the real property taxes and insurance premiums. On the first appeal we held: "Under these circumstances an award to wife of only $550 per month spousal support is unconscionable, particularly in light of the fact that spousal support husband is ordered to pay will be deductible from his income for income tax purposes. (See *In re Marriage of Rosan* [(1972)] 24 Cal.App.3d [885,] 894-895 [101 Cal.Rptr. 295]; see also *In re Marriage of Andreen* [(1978)] 76 Cal.App.3d [667,] 671-672 [143 Cal.Rptr. 94].)"

The trial on remand was had on October 9, 1984. In anticipation of that trial wife submitted an updated income and expense declaration setting forth expenses of $3,249 and income of $1,048 per month including spousal and child support. The evidence disclosed that wife was still not employed except that she had had one or two short term part-time jobs from which work she had received minimal compensation. Wife's only other income was $108 per month in rents from some acreage in Idaho and $90 per month dividends from some stock.

Husband on the other hand remarried on October 7, 1982, three weeks after rendition of the interlocutory decree. His new spouse was then employed and as of January 1, 1983, was earning $1,378.67 gross monthly. Husband's gross income had by then increased to $4,092.72 gross per month. Their combined disposable income was $3,788.10 per month as of January 1, 1983.

The evidence showed that by January 1, 1984, husband's monthly gross had increased to $4,302.29; his new wife's earnings had increased to $1,740.66 per month gross and that their combined net disposable monthly income was $3,992.93. By July 1984 the gross earnings of husband and his new wife had increased to $4,327.07 and $1,747.59 per month, respectively, and their combined net disposable income was $4,039.32 per month. Based on these figures the trial court increased its award of spousal support to wife from $550 per month to $900 per month and in accordance with the directions of this court made that award retroactive to June 15, 1982, resulting in an arrearage of $10,500. Husband was ordered to pay the arrearage $100 or more per month including interest at the rate of 10 percent per annum.

*Discussion*

## 1. *Statement of Decision*

Wife first contends the trial court rendered an inadequate statement of decision under Code of Civil Procedure section 632, and that wife is therefore entitled to the benefit of Code of Civil Procedure section 634, which provides that when a statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, it shall not be inferred on appeal that the trial court resolved the issue in favor of the prevailing party.

■ The statement of decision was grossly inadequate because among other things it did not reveal what if any figures the court determined as representing the parties' income and expenses. Although we think it makes little difference because the facts are relatively undisputed and the parties have submitted detailed income figures to us, we are persuaded wife is correct that no findings should be implied against her under the circumstances here disclosed.

■ Trial on remand lasted less than one day and wife was therefore required to request a statement of decision before submission of the matter. Through counsel she did so. However, Code of Civil Procedure section 632 requires that the request for a statement of decision "specify those controverted issues as to which the party is requesting a statement of decision," and this wife failed to do on the day of the trial. However, several days later she filed a written request specifying the issues and in response the court ordered husband's attorney to prepare and submit a statement of decision. None was forthcoming and eventually the trial court adopted its notice of intended decision as the statement of decision without further hearing.

Normally, the failure to specify issues in a timely fashion would foreclose wife from attacking the sufficiency of the statement of decision on appeal. However, it is somewhat unrealistic to expect counsel on the day of trial to submit a written request with a full specification of the controverted issues to be covered. Where, as here, the issues were limited in the first instance by the directions of this court in the decision of the first appeal, neither the trial court nor the adverse party suggested the request for statement of decision made on the day of trial was deficient on account of its failure to specify the controverted issues to be covered, the requesting party shortly thereafter designated the issues to be covered, and the court ordered a statement of decision to be made, implied findings should not be indulged and we shall not indulge any.

## 2. *Spousal Support*

██ Wife contends that the new spousal support of $900 per month retroactive to June 15, 1982, is grossly inadequate and constitutes an abuse of judicial discretion as does the order for payment of the $10,500 arrearage at $100 per month. We agree.

Wife requested the court to value husband's nonmatured pension rights and award those to him while awarding her the family residence, but as it did at the original trial, the court declined to do so. As a result, wife and the remaining minor child are still occupying the family residence and wife is still paying the trust deed payments, taxes and insurance pursuant to court order. The trust deed payments amount to $517.90, leaving wife with only $382.10 to pay taxes and insurance on the house and to support herself from the $900 ordered by the court. And out of that wife had to pay for the son's remedial schooling $247 per month or $97 more than the $150 by which the child support order was subsequently increased in May 1985. Wife's only other income is $108 per month in rents from some acreage she owns in Idaho, $90 per month dividends from some stock she owns and a few dollars per month from odd jobs. To add insult to injury, under the order for disposition of the family residence, one-half of the principal being paid by wife on the trust deeds plus one-half of the payments for taxes, insurance and maintenance accrue to the benefit of husband.

By contrast, husband's monthly disposable income was $2,221.99 at the time of the original trial and $2,689.21 at the time of the trial on remand. In addition, his new wife earned $1,747.59 per month gross, and by husband's own figures at the time of the trial on remand he and his new wife had net disposable income of $4,039.32 per month available to meet their expenses.

██ Husband urges that there is no law indicating all of his new wife's earnings should be combined with his for the purpose of computing the amount available for spousal support and that any such rule would deter remarriage of the supporting spouse. We do not agree. The new spouse's earnings are considered available to defray expenses of the new community and thus obviously increase the amount available for payment of support. (*Gammell* v. *Gammell* (1979) 90 Cal.App.3d 90, 92-93 [153 Cal.Rptr. 169]; see also *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 63 [202 Cal.Rptr. 10].) The proper method for determining what funds are available is to treat the combined income of the supporting spouse and the new spouse as the income of the new community and deduct the combined expenses of the new community therefrom to the extent they are reasonable or necessary. In the case at bench no detailed schedule of the expenses of the new

community was presented, but from the figures that were presented it is abundantly clear the new community was living well while wife and the dependent child were not. During this litigation wife has entirely consumed an inheritance of $35,000 for living expenses for herself and the children of the parties. The record indicates that husband and his new wife have purchased as their residence a condominium on which their trust deed payments and association fees alone amount to some $1,500 per month.

██ As we attempted to make clear in our earlier decision, "[w]hen the order made by the trial court affords one of the spouses a significantly higher standard of living than the other and affords the other a significantly lower standard of living than was accustomed during the marriage, an abuse of discretion is indicated. (*In re Marriage of Andreen, supra,* 76 Cal.App.3d at pp. 671-672; *In re Marriage of Rosan, supra.*)" That is precisely the situation in the case at bench. In addition, we again observe that spousal support payments by husband to wife would be deductible to the new community for federal income tax purposes, thereby making available to both parties funds that would otherwise be paid to the Internal Revenue Service. Figures prepared by a certified public accountant estimate that if spousal support had been increased by $300 to $1,200 per month the cost to husband and his new wife would have been about $135 per month and that if the amount of spousal support had been increased $600 to $1,500 per month the extra cost after tax consequences would have been about $272 monthly.

As to deterring remarriage, we can only say that to the extent the rule makes persons realize that they may not pursue their own pleasures in utter disregard of an earlier marriage of 22 years that has produced four children and a dependent spouse, it is to be commended rather than faulted.

We conclude the $900 per month spousal support order was grossly inadequate under the circumstances and that the order therefor constitutes a manifest abuse of discretion.

### 3. *Payments on Spousal Support Arrearage*

██ In connection with her argument relative to spousal support, wife contends that the court's order that husband pay the spousal support of $10,500, including interest at 10 percent, at a minimum rate of $100 per month also constitutes an abuse of discretion. Quite so.

Of course, inasmuch as we have held the ordered support of $900 per month inadequate, the arrearage will be substantially more than the $10,500 and a payment of $100 per month would not even cover the interest on the larger amount. But even at the $10,500 figure the interest alone would have

been $87.50 per month, and a $100 per month payment would require wife to wait 20 years for payment of support she was required to do without because of the court's original abuse of discretion and that can only be viewed as a further abuse of discretion.

■ Although the earnings figures supplied to the court by the parties in connection with the trial on remand were those from 1984, husband suggests that because the arrearage was computed retroactively to June 15, 1982, the 1982 income and expense figures should have been used to compute the proper amount of support and the arrearages. Even assuming the issue was properly preserved for appeal, we do not agree. Where a support award is reversed on appeal as inadequate the trial court on remand should attempt to fix the amount of support on an equitable basis bearing in mind that the supported spouse has been deprived of adequate support during the pendency of the appeal and to that end should consider the income and expense figures at the time of the retrial. (*In re Marriage of Jacobs* (1981) 126 Cal.App.3d 832, 835-836 [179 Cal.Rptr. 169]; *In re Marriage of Jacobs* (1980) 102 Cal.App.3d 990, 993 [162 Cal.Rptr. 649].)

4. *Motion for Modification of Spousal Support/Child Support*

After our opinion on the first appeal was filed, wife filed an order to show cause (OSC) for increased child support, spousal support and for attorney's fees. Although originally set on the order to show cause calendar for an earlier date, by stipulation the motion for modification was continued to the same date as the date for trial on remand and assigned by the presiding judge to the trial judge. The trial judge, however, refused to hear the motion for modification in conjunction with the trial on remand, indicating he was obligated to correct errors in the judgment, but that the regular family law department was fully able to consider wife's motion for modification. Wife contends the trial court abused its discretion in refusing to hear concurrently wife's motion for modification of spousal support/child support and for attorney's fees.

■ We agree the trial court should have heard and determined both matters simultaneously. Since the 1984 figures were being used, the evidence would have been much the same and the trial court might even have found some of the information developed in connection with the request for modification helpful in dealing intelligently with the issues to be tried on remand. Moreover, it is relatively clear that both parties and the presiding judge who set the OSC for the same date intended and expected the matters be heard together, not an unreasonable proposition.

However, in view of our determination the $900 support order constitutes an abuse of discretion, the trial court's refusal to hear the motion for

modification in conjunction with the trial on remand may still be cured if this matter is to be tried yet again. And if the matter is to be retried a third time we shall direct that it be assigned to a different trial judge.

5. *The Pension*

██ ██ Wife contends the trial court improperly refused to divide the community property interest in husband's pension, that the trial court should have effected a division by awarding the pension to husband and awarding the family residence to wife with an equalizing payment from husband to wife to offset the value of the pension, and that, in any event, the court should have made protective orders to secure wife's interest against husband's death or withdrawal of employee contributions in contravention of her community property rights.

██ We agree the court should have made protective orders restraining husband from withdrawing funds from or assigning or hypothecating any interest in the retirement benefits without prior approval of the court, ordering husband to name wife and keep her named as the beneficiary of any benefits payable or available in the event of his death and ordering that in the event husband should violate said orders in any fashion, the retirement benefits should immediately be valued and divided and that husband or his estate should indemnify wife for any loss to her caused by husband's failure to abide by the court's orders or otherwise protect wife's community property interests in the retirement benefits. (See Civ. Code, § 4800.8 (Stats. 1986, ch. 686, § 1, eff. Jan. 1, 1987; see generally *In re Marriage of Becker* (1984) 161 Cal.App.3d 65 [207 Cal.Rptr. 392].) ██ We are unable, however, to conclude the trial court abused discretion in not presently dividing the retirement benefits.

In the original judgment the court failed to characterize or divide the husband's pension fund. On the first appeal we reversed, directing the trial court to characterize husband's retirement, determine the amount of community interest therein, and make any appropriate orders for division. We noted the California Supreme Court has encouraged trial courts to award pension rights to the employee spouse, compensating the other spouse with other community property (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 428 [174 Cal.Rptr. 493, 629 P.2d 1]), but we also recognized that under appropriate circumstances a trial court is authorized to reserve jurisdiction over the manner in which future retirement benefits are to be divided or disposed of.

Following the trial on remand, the trial court did characterize the retirement benefits and assign as community property a proportion equal to

eighteen years, seven months and four days divided by the total term of employment at the time husband retires. Although this court favorably referred to the possibility of division of the community property by awarding the retirement benefits to husband and awarding the family residence to wife, with adjustments made for the differential in value of the two assets, our favorable reference did not constitute a directive.

Evidence adduced at the first trial placed the value of the retirement rights at between $78,000 and $84,000. The equity in the family residence, on the other hand, amounted to about $53,000. In view of the substantial demands on husband's current income, the fact that husband is not yet eligible to retire and the fact that no other substantial community assets were available from which to provide an equalizing payment, we cannot say the court's refusal to make an immediate division and its reserving jurisdiction over the pension rights was an abuse of discretion. The cases relied on by wife to establish her right to immediate payment of her interest in the retirement were cases in which the right to receive the retirement was fully matured and was contingent only upon the election of the employee spouse whether to retire or to continue working.

### 6. *Credit of $5,800 to Wife*

 Wife contends the trial court erred in failing to consider her claim for reimbursement of $5,800 she alleges she contributed to the purchase of the family residence. At the first trial, the court received testimony from wife that she contributed $5,800 from her separate property as a down payment on the home. In its judgment following the first trial, the court found there was no agreement to preserve the $5,800 as a separate property interest to be reimbursed to wife. Wife now contends that the subsequent passage of Civil Code section 4800.2 mandates that wife should be reimbursed for her contribution absent a written agreement to the contrary.

As the California Supreme Court recently held in *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253], section 4800.2 of the Civil Code may not be retroactively applied to require reimbursement. The trial court determined on substantial evidence that there was no oral agreement for reimbursement. Thus, the trial court's ruling on the first trial was legally correct, and the court did not err in refusing to further consider the issue which was not before it in the trial on remand.

### 7. *The Equalization Payment*

 In the original judgment the court awarded community property to wife at a total value of $3,765.50. Deducting from that figure $761 the

court found wife had paid on account of community debts, the court found wife had received community property in the net amount of $3,040.50.

The court awarded community property items of a value of $6,064.50 to husband, but found that husband was entitled to credit for payments he made on community debts in the amount of $8,006.62, giving husband community property having a value of minus $2,062.12. The court then ordered wife to pay husband the sum of $2,533.31 (one-half the difference between what she got and what he got) to equalize the division of community property.

On the first appeal, we reversed the order with respect to the equalization payment in order to permit the court flexibility in characterizing and dividing the community property on remand. Following the trial on remand, the court ordered that husband be paid $5,066.62 out of the proceeds of the sale of the family residence after the remaining minor child reaches the age of majority. The $5,066.62 ordered by the court to be paid from the sale of the residence was exactly twice the equalization payment the court ordered wife to pay directly to husband in the original judgment. Wife takes exception to this, but she is in error.

In the original judgment the court ordered wife to make a cash payment of one-half the difference between the community property received by wife and the community property received by husband. In the judgment following remand the court ordered reimbursement to husband from the eventual sale of the community property residence of the whole amount of the difference between the property received by husband and the property received by wife. Except for arithmetic errors in calculating the amount of the difference between the property received by wife and the property received by husband, the court's order was sound. Since husband was to be paid out of community property, one-half of which was already his, rather than in cash by wife, he had to get twice the amount wife was originally ordered to pay.

However, the net community property received by wife ($3,765.50 minus $761) was $3,004.50, not $3,040.50. In addition, the credit to husband for community obligations paid results in a net figure of minus $1,942.12, not minus $2,062.12 ($6,064.50 minus $8,006.62). Thus, the difference between what wife received and what husband received was $4,946.62 not $5,066.62. This difference may be compensated by crediting $2,473.31 (one-half the difference), together with interest thereon at the rate of 7 percent per annum from September 20, 1982, against the spousal support arrearage owed to wife as her separate property.

8. *The Loan and Insurance Policies*

Finally, wife contends she should have been allowed to produce evidence at the trial on remand relating to various insurance policies and about a

$10,000 loan allegedly taken out by husband shortly before separation rather than some years earlier as he testified.

In its original judgment, the court awarded to each of the parties various insurance policies at certain values. Wife evidently wanted to relitigate the valuation of these policies, intimating that husband concealed their true value at the original trial. In addition, wife wished to present evidence with respect to the loan secured by the second deed of trust on the family residence, alleging that husband misled her and the court at the time of trial by testifying he took out the loan in 1976 or 1977, whereas, she alleged, he in fact took out the loan approximately five months before the date of separation.

Wife had a full opportunity to investigate and litigate these issues at the original trial. None of these issues was raised in the first appeal and none was within the purview of the issues mentioned in the order remanding the case to the trial court. Thus, these matters were not properly in issue at the trial on remand.

The trial court did, in its judgment on the first trial, reserve jurisdiction to adjust the cash surrender value of the American National Insurance policy. If counsel can verify the true value of that insurance policy, an application for relief may still be presented to the trial court under the reservation of jurisdiction. This does not, however, require a reversal of any of the issues presented on this appeal. If the trial court should find the insurance policy had a different value than that assigned to it, an equalization payment can be ordered.

### Disposition

The foregoing conclusions would normally lead to reversal of the judgment in several important respects and a remand of the case for a third trial as to those issues. In recognition of the fact that this matter has already been greatly overlitigated, both parties have requested this court to resolve their dispute itself so as to avoid further trial court proceedings and the possibility of yet another appeal. We would accommodate the parties if we felt we had the authority to do so but we are unaware of any authority giving this court the power to fix the amount of spousal support or make decisions with respect to other matters committed to the discretion of the trial court. In an effort, however, to honor the request of the parties insofar as possible, we shall modify and affirm the judgment as modified on the condition that the modification is consented to by both parties. Otherwise, as we see it, we have no alternative but to reverse those portions of the judgment we have determined to be erroneous.

Accordingly, on the condition that both parties file their written consent to the modification with the clerk of this court within 20 days of the date this opinion is filed or, alternatively, within said time file with the clerk of this court a stipulation for a different modification executed by the parties and their respective attorneys, the judgment is hereby modified as hereinafter set forth and as so modified is affirmed. Otherwise the judgment is reversed as to the spousal support order, the ascertainment of the arrearages on payment of spousal support, the order for payment of such arrearage at $100 or more per month and the order that husband should be reimbursed from the proceeds of sale of the family residence the sum of $5,066.62. Upon failure of the condition hereinabove specified, the judgment is also reversed as to the order for sale of the family residence, so the trial court may have greater flexibility and may consider the possibility of awarding the family residence to wife with an offsetting credit against husband's arrearages in spousal support payments and interest thereon. If the condition hereinabove specified is not fulfilled and the judgment stands reversed in these respects, the trial court is directed to assign the case to a judge other than the judge who conducted the trial on remand following the first appeal, to redetermine the amount of spousal support to which wife was entitled from and after June 15, 1982, in accordance with the views expressed in the opinion, to redetermine the amount of arrearages on such spousal support and the amount of interest due thereon, to credit husband against said arrearages and interest the sum of $2,473 together with interest thereon at the rate of 7 percent per annum from and after September 20, 1982, which amounts to $736, for the purpose of equalizing the division of the community property thus far made; and to make protective orders with respect to wife's community interest in the federal civil service retirement rights as set forth in the opinion. Whether the judgment stands reversed with directions or modified and affirmed, wife shall recover costs on appeal together with the sum of $5,000 on account of her reasonable attorney fees on appeal in addition to any attorney fees previously ordered by the trial court.

The conditional modification of the judgment is as follows: As and for spousal support for wife during the period June 15, 1982, through December 31, 1982, husband shall pay to wife the sum of $1,000 per month; for the period January 1, 1983, through December 31, 1983, the sum of $1,250 per month; for the period January 1, 1984, through June 30, 1987, the sum of $1,350 per month; for the period July 1, 1987, through June 30, 1988, the sum of $1,250 per month, which amount shall thereafter automatically reduce further by $100 on July 1 of each year commencing July 1, 1988, until the figure reaches $650 per month at which time it shall continue at that amount until the death or remarriage of wife or until further order of the court. The court reserves full jurisdiction to modify or terminate spousal support at any time upon a showing of changed circumstances.

Husband's arrearages on the payment of spousal support as of December 31, 1986, are determined to be $27,425 plus interest at the rate of 7 percent per annum on shortages in payment as they occurred which amounts to $4,806.[1] Thus, the total of the arrearages and interest as of December 31, 1986, is $32,231.

To equalize the division of the community property previously made, husband is entitled to credit against the $32,231 arrearages and interest on spousal support of $2,473 together with interest thereon at the rate of 7 percent per annum from September 20, 1982, which amounts to $736, a total credit of $3,209. After said credit the spousal support arrearage with interest as of December 31, 1986, totals $29,022.

The former family residence of the parties located at 3625 Hillview in Riverside, California, is awarded to wife as her sole and separate property subject to first and second trust deeds having unpaid balances of approximately $18,000 and $7,500, respectively, any unpaid real property taxes and any liens or encumbrances incurred by wife, which obligations are assigned to wife and from which she shall hold husband free and harmless. Husband shall execute and deliver to wife a grant deed conveying his interest in the property to wife, warranting that he has created or suffered no liens or encumbrances on the property other than the two aforementioned deeds of trust and any unpaid real property taxes.

As and for his equity in said former family residence husband shall be credited the sum of $27,250 against the arrearages and interest owing on spousal support of $29,022, leaving as of December 31, 1986, a total unpaid on said spousal support and interest of $1,772 which shall be paid by husband to wife together with 10 percent interest on the unpaid balance thereof from and after January 1, 1987, in monthly installments of $100 or more until paid in full.

The court reserves full jurisdiction over any and all federal civil service retirement rights of the parties resulting from husband's federal civil service employment. Husband and his agents, servants and privies are enjoined and restrained from withdrawing any funds from or assigning or hypothecating any interest in the retirement benefits without prior approval of the Riverside

---

[1]The accrued interest figure is not a precise calculation but a close approximation based on the assumption that $550 a month spousal support was paid by husband during the period June 15, 1982, through October 1984 and that $1,000 was paid against spousal support ($900 current and $100 on arrearages) from November 1, 1984, through December 1986.

Superior Court and husband is ordered to name wife (Mary Jo Ramer) and keep her named as the beneficiary of any benefits payable or available in the event of husband's death. In the event husband should violate any of the foregoing orders or in any fashion impair the interests of wife in said retirement rights, the federal civil service retirement benefits shall immediately be valued and divided and husband and/or his estate shall indemnify wife for any loss to her caused by husband's failure to abide by the aforesaid orders or his failure otherwise to protect her interest in the retirement benefits.

All orders for child support heretofore made by the Riverside Superior Court are reconfirmed, including the stipulated order that husband shall keep the children of the parties named as insureds on his group medical insurance program through his employment so long as the same is available and so long as a child is eligible for coverage.

All orders to show cause re attorney fees and/or modification of child or spousal support heretofore filed by wife and still pending are ordered dismissed.

(The foregoing modification shall be effective only if the condition concerning written consent of each party filed with the clerk is fulfilled.)

Rickles, Acting P. J., and Cramer, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.