[No. A043835. First Dist., Div. Five. Nov. 20, 1989.]

In re the Marriage of RONNA H. and ALLAN M. BERLAND.
RONNA H. BERLAND, Appellant, v.
ALLAN M. BERLAND, Respondent.

1258

**COUNSEL**

Hadden Roth and Roth, Thorner & Curtin for Appellant.

Paul Camera, Camera & Colyer, Richard Sherman and DeGoff & Sherman for Respondent.

**OPINION**

**KING, J.**—In this case we hold that the trial court, in granting a motion to modify a *Richmond* spousal support order, possesses broad discretion not only as to how long to extend the order, but also as to the amount of spousal support ordered to be paid during the extension. A *Richmond* order is normally issued with the expectation that if the supported spouse exercises reasonable diligence, he or she will have become self-supporting by the date set for support payments to end. ■ If the court finds that there was a failure to exercise reasonable diligence to become self-supporting, but that even if reasonable diligence has been exercised the supported spouse would still not have become fully self-supporting, the court possesses the discretion to extend the duration of the order and to fix the support in the amount the

supported spouse would have required if reasonable diligence had been exercised. The trial court possesses the discretion to determine whether or not the supporting spouse should be required to assist the supported spouse with financial needs which are unmet because of the failure of the supported spouse to have exercised reasonable diligence to become self-supporting.

Ronna H. Berland appeals from a postjudgment order extending the duration but reducing the amount of her spousal support, and denying her attorney and accountant fees and costs. We affirm.

When Ronna and Allan M. Berland dissolved their lengthy marriage, the trial court awarded Ronna spousal support of $3,200 per month (reduced to $2,750 per month after the distribution of community property) for 30 months. On February 1, 1988, support was to be reduced to $1 per month unless Ronna had filed a modification motion, in which case she would bear the burden of showing "that she had conscientiously pursued a course of conduct designed to produce satisfactory employment in the field of her choice at a salary enabling her to contribute substantially to, or undertake, her own support."[1]

On December 10, 1987, Ronna filed a motion to modify spousal support and for attorney fees and costs. After a hearing, the trial court ordered support to continue for 16 additional months at $1,800 per month, to be reduced to $1 per month on June 1, 1989, unless Ronna had filed another modification motion. The trial court denied Ronna's motions for attorney fees and costs, and for reconsideration (Code Civ. Proc., § 1008, subd. (a)).

"Whether a modification of a spousal support order is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 357-358 [236 Cal.Rptr. 543].) Discretion is abused only when "the court exceeds the bounds of reason, all circumstances before it being considered" (*In re Marriage of Melton* (1980) 107 Cal.App.3d 559, 564 [165 Cal.Rptr. 753]), or when, "after calm and careful review of the entire record, it can fairly be

---

[1] This type of order for spousal support is known as a *Richmond* order. (See *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381].) We have previously encouraged the issuance of such orders in appropriate cases. "If the court feels the evidence justifies an order terminating jurisdiction at a future date, but is concerned about unforeseeable circumstances which might arise prior to that date, the proper approach would be to issue [a *Richmond* order]." (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 665 [235 Cal.Rptr. 587].)

said that no judge would reasonably make the same órder under the same circumstances" (*In re Marriage of Roesch* (1978) 83 Cal.App.3d 96, 102 [147 Cal.Rptr. 586]).

## I

Ronna first challenges the trial court's finding that she did not diligently pursue gainful employment. In its statement of decision the trial court found that Ronna had not satisfied the burden placed on her in this regard by the prior court order because "between July 24, 1985 and February 10, 1986, and between April 4, 1986, and September 1986, [she] failed to consistently and diligently pursue a salaried position in her chosen field [philanthropic fund-raising] and, at the same time, claimed to have realized only in September 1986, what Judge Broderick had cautioned in July 1985, that 'Paying positions in this field are not easily found.' Had [she] turned to her now chosen field of residential real estate sales earlier, she may well have realized Judge Broderick's expectation that she would be self-supporting, or substantially so, by February 1, 1988."

"Where [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." (*In re Marriage of Hoffmeister, supra,* 191 Cal.App.3d at p. 358.)[2] According to her own summary of the evidence, during the specified periods—a total of about 12 months—Ronna twice applied for jobs with Planned Parenthood which rejected her for lack of fundraising experience. She attended two fundraising skills seminars designed for those already employed by nonprofit agencies. She had one "informational interview" which might be said to constitute employment counselling. She wrote one letter offering to assist in the production of a KQED program on the Constitution. She continued to work as a volunteer at Jewish Family and Children's Services through November 1985.

Ronna's "sporadic and desultory efforts" consistently confirmed Judge Broderick's warning that paid fundraising positions were rare, and also repeatedly revealed that she did not have the qualifications or

---

[2] Ronna quotes the rule that "failure of a court to explain the factual and legal basis for its decision on a principal controverted issue, when properly requested by a party" constitutes reversible error (*McCurter* v. *Older* (1985) 173 Cal.App.3d 582, 593 [219 Cal.Rptr. 104]), but does not allege the statement of decision was inadequate in this regard. She does allege the trial court's findings are based on "a highly selective recitation of the record, emphasizing and exaggerating facts unfavorable to [her]" and omitting contrary evidence, citing *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 [160 Cal.Rptr. 516, 603 P.2d 881], as if the same standards apply to a statement of decision as to an appellant's brief.

experience to obtain one. Once she "decided," some 14 months after the original order, that job prospects in her chosen field were "dim," she enrolled in real estate school, passed the course with an "A," passed the state examination, and obtained a good job, all within 6 months. By her own admission, she enjoys real estate sales, she is good at it, and she anticipates becoming economically self-sufficient in the field. Thus, substantial evidence supports the trial court's findings. (See *In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 162-163 [228 Cal.Rptr. 76].)

Ronna asserts that she was "involved in the purchase of a condominium" in fall 1985, but does not indicate how this involvement might have hindered her job search. She also alleges there were "important additional court proceedings" between July 24, 1985, and January 15, 1986, but her own record citations reveal nothing which could conceivably have required any significant expenditure of her time. Contrary to Ronna's suggestion, the court in *In re Marriage of McNaughton* (1983) 145 Cal.App.3d 845, 852 [194 Cal.Rptr. 176], did not allow "a reasonable transition period to make these changes" before beginning a mandatory job search. Rather, it affirmed an award of temporary spousal support analogous to that Ronna received pending division of the community property.

Finally, Ronna quotes several lines from the 24-page report of a court-ordered vocational evaluation on March 11, 1988, touting her "consistently motivated, well thought out and well executed job search effort." Even as regards expert testimony, "The question is not, of course, whether there was evidence to support a contrary decision. Rather, we must determine if there is evidence to support the decision made." (*In re Marriage of Lewin* (1986) 186 Cal.App.3d 1482, 1489, fn. 3 [231 Cal.Rptr. 433].) There is. Ronna's lengthy diatribe to the contrary notwithstanding, it was not an abuse of discretion for the trial court to accept the evidence in support of Allan's position rather than hers.[3]

## II

■ Ronna contends the trial court abused its discretion in lowering the amount of her spousal support.[4] ■ "To justify a continuation of support, [Ronna] has the burden to show a change of circumstances since the initial award, which may be in the form of a deviation from those reason-

---

[3] Ronna's assertion that she has made prudent use of her financial assets is a red herring. Although Allan alleged she had not, the trial court did not rely on such a finding in making its support order.

[4] Although she initially challenged the limitation of the extension to 16 months as well, in her reply brief Ronna states that subsequent trial court proceedings have rendered that contention moot.

able expectations of her ability to become self-supporting within a certain period of time. [She] must also show she has made an effort to become self-supporting. [¶] [Allan] need not show that her failure to obtain employment consistent with her training and ability is due to bad faith. A showing of poor judgment of a supported spouse in pursuing a certain career is sufficient to support denial of a modification of a support order." (*In re Marriage of Hoffmeister, supra,* 191 Cal.App.3d at p. 365, citations omitted.)

 Thus as acknowledged by Ronna, having found that she had not diligently pursued gainful employment (see part I, *ante*), the trial court could simply have denied her motion for modification and provided that no spousal support would have to be paid. (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742 [189 Cal.Rptr. 622].) Instead, as Allan notes, it "essentially gave Ronna back the time that she had wasted, and more," albeit at a lower amount per month. Ronna attacks the trial court's specific findings as to her income and expenses, arguing she showed "a clear need" for continued support at $2,750 per month.[5] But the reduction in support was not premised on a finding of reduced need. The trial court expressly concluded that because Ronna was responsible for the unnecessary delay in her ability to be self-supporting, it would be unfair to require Allan to pay as spousal support the full amount necessary to make up the difference between her current reasonable needs and her current gross income. It was up to the trial court in the exercise of its discretion to determine whether Allan should be financially responsible in any way for Ronna's failure to pursue financial independence with reasonable diligence. Under these facts, the trial court's determination of the relative equities was well within its discretion. (See *In re Marriage of Sheridan, supra,* 140 Cal.App.3d at pp. 748-749.)

Ronna's citation to *In re Marriage of Ramer* (1986) 187 Cal.App.3d 263, 272-273 [231 Cal.Rptr. 647], for the proposition that it is an abuse of discretion to force a supported spouse into a lower standard of living after a lengthy marriage is inapt, as that case did not concern a prior order requiring the supported spouse to be substantially self-supporting by a given date. More nearly on point is *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902 [243 Cal.Rptr. 179], where wife petitioned for an increase in spousal support from $1,800 to $3,000, but the court affirmed a reduction to $500 without further reservation of jurisdiction because she had failed to exercise reasonable diligence to become self-supporting within the expected time. In

---

[5] Although she objected to Allan's proposed statement of decision in a letter to the trial court, Ronna "never asked for the court's calculation to be included in the statement of decision." (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 754 [214 Cal.Rptr. 661].)

this case, as Allan remarks, the trial court achieved "a very finely tuned equitable balance" by lowering the amount of Ronna's support while extending its duration.

### III

█ Finally, Ronna contends the trial court abused its discretion in denying her attorney and accountant fees and costs (Civ. Code, § 4370, subd. (a)), based on its finding that "in light of [her] assets, she has the ability to pay reasonable attorney's fees and accountant's fees and costs incurred by her in this proceeding."[6]

None of the cases she cites compels a contrary order. The quoted portion of *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58], lists factors which may be considered in determining what constitutes a reasonable fee, which the trial court neither was asked to do nor did in this case. Reasonableness is not at issue, despite Allan's extensive discussion thereof. The cited page of *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219 [215 Cal.Rptr. 789], announces that "the trial court must consider the respective incomes and needs of the parties," which it incontrovertibly did in this case.

The inability to pay litigation costs implied by a finding of changed circumstances requiring increased spousal support (*In re Marriage of Hoffmeister, supra,* 191 Cal.App.3d at p. 366) need not be inferred where, as here, no such finding has been made. In *In re Marriage of McElwee, supra,* 197 Cal.App.3d 902, the trial court's award of attorney fees was not at issue on appeal. The cited portion of *In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 59-60 [253 Cal Rptr. 354], examines policy considerations which might limit the amount of attorney fees imposed as sanctions (Civ. Code, § 4370.5) on the less affluent party. As Ronna herself admits, the wife in *In re Marriage of Hargrave* (1985) 163 Cal.App.3d 346, 356-357 [209 Cal.Rptr. 764] received no liquid assets from the community property division.

The trial court did not abuse its discretion in denying Ronna's motion for fees and costs. Nor has she met the conditions for an award of attorney fees on appeal. (*In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 78 [190 Cal.Rptr. 104].)

---

[6]The trial court estimated Ronna's liquid assets at between $100,000 and $135,000. What Ronna calls "the accurate amount," $106,467, would appear to fall within this range.

The judgment is affirmed. The parties shall bear their own appellate attorney fees and costs.

Low, P. J., and Haning, J., concurred.