Filed 7/19/24  Marriage of Safonov and Safonova CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of VLADIMIR SAFONOV and LILIA SAFONOVA. | D082618 |
| VLADIMIR SAFONOV, Appellant, v. LILIA SAFONOVA, Respondent. | (Super. Ct. No. D483280) |

APPEAL from an order of the Superior Court of San Diego County, Alana W. Robinson, Judge.  Affirmed.

Dennis Temko for Appellant.

No appearance for Respondent.

After 23 years of marriage, Lilia and Vladimir divorced in 2005.  In 2022, Lilia filed a request for an order (RFO) increasing her monthly spousal support arrearage payments, reinstating an attorney fees award based on the parties' earlier stipulation, and seeking additional attorney fees.  The family

court granted her requests. It later denied Vladimir's motion for reconsideration.

Vladimir appeals, contending the court erred: (1) on multiple grounds when it reinstated attorney fees; (2) by increasing the monthly spousal support arrearage payments; (3) denying reconsideration; and (4) awarding Lilia additional attorney fees. We reject his arguments and affirm the order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the couple's dissolution, Vladimir paid Lilia $1,000 per month in spousal support. In April 2012, the family court determined Vladimir owed Lilia $21,338 in spousal support arrearages and ordered him to pay $250 per month toward those arrearages, in addition to the original ordered support payment of $1,000 per month, for a total of $1,250 per month.

In June 2017, the parties and their respective counsel stipulated regarding the attorney fees arrearages Vladimir owed Lilia (the stipulation). At that time, Vladimir owed $52,596.42 for attorney fees and the parties agreed to suspend $27,596.42 of that amount, leaving a balance of $25,000 to be paid in installments per the stipulation's terms. The stipulation provided the suspended attorney fees would "be reinstated in full forthwith if [Vladimir] fails to make a timely monthly spousal support payment and/or arrearages . . . ." The stipulation gave Vladimir a five-day grace period from the first day of each month to make the payments.

In November 2022, Lilia filed her RFO to establish spousal support arrearages of $54,965.33, increase the monthly arrearage payments to $2,300 a month, and reinstate the balance of attorney fees pursuant to the parties' stipulation. Lilia claimed the attorney fees award should be reinstated

2

because "on certain occasions, [Vladimir] has failed to make timely payments," including a late arrearage payment in May 2020.

At a hearing on the matter in March 2023, the court asked to hear from the parties regarding Vladimir's alleged late payments. Lilia's counsel indicated she lodged exhibits with the court regarding this issue. Vladimir's counsel interjected that he never received the exhibits and only received the notice of lodgment. After Lilia's counsel offered to share her copy of the exhibits with Vladimir's counsel, the court indicated it would proceed but would consider continuing the matter should Vladimir's counsel indicate he needed more time to dispute the exhibits.

Lilia's counsel directed the court's attention to an untimely arrearage payment of $250 mailed by Vladimir on May 12, 2020. Vladimir's counsel argued reinstating the arrearages over a single late payment was "patently unfair." The court found credible evidence showed Vladimir made a $250 payment outside the five-day grace period and enforced the stipulation's terms. It reinstated the suspended balance of $27,596.72[1] and added 10 percent legal interest, for a total amount of $43,511.99. The court found Vladimir's income and expense declaration to be "evasive and unreliable" and indicated it had "serious concerns about the accuracy and credibility" of the declaration. It increased Vladimir's monthly arrearage payments from $250 to $1,250. It also ordered Vladimir to pay $10,000 of Lilia's attorney fees at a rate of $250 per month.

Vladimir sought reconsideration of the court's orders under Code of Civil Procedure section 1008. He submitted additional evidence consisting of

---

1    The stipulation states the suspended amount is $27,596.42, but the court's order reinstating the suspended attorney fees states the amount is $27,596.72.

emails he claimed he did not have available during the prior proceeding but subsequently located. These emails show he communicated with Lilia in May 2020 expressing his belief the arrearage payments were complete and he would only be paying her the base monthly amount of $1,000 from that point forward. On May 11, 2020, Lilia's counsel emailed Vladimir contending he still owed more arrearage payments, the arrearages were accruing legal interest, and he should still be making the $250 monthly payments. Vladimir responded to counsel's email the following day, indicating "to avoid any misunderstanding" he sent Lilia a $250 payment. The following month, Vladimir and Lilia's counsel sent several emails back and forth to clarify the amounts he had already paid in arrearages. Vladimir admitted he "found a mistake in [his] calculations" and would "continue [to] pay $1,250" each month.

Vladimir asserted a legitimate dispute existed as to the amounts he owed in arrearages, and when counsel alerted him to the possibility he still owed further amounts, he resumed payment immediately within 24 hours of being contacted. He argued the stipulation should not be enforced because he substantially complied with its terms. He asserted Lilia waived any right to enforce the terms of the stipulation when she accepted the late payment. Finally, he argued the equitable defenses of laches and unclean hands prevented enforcement of the stipulation. Vladimir also requested reconsideration of the court's decision regarding additional payments toward arrearages and the $10,000 payment of Lilia's attorney fees.

The court denied the reconsideration motion, finding Vladimir did not meet his burden of establishing new or different facts, circumstances, or law. The court reasoned that Vladimir did not explain why he could not present

4

the allegedly newly discovered emails pertaining to the May 2020 payment earlier.

## II.

## DISCUSSION

### A. *The court did not err by reinstating attorney fees.*

Vladimir challenges the reinstatement of attorney fees under the parties' stipulation on several grounds. He contends: (1) the language in the stipulation allowing reinstatement of attorney fees is an unenforceable liquidated damages clause; (2) reinstatement of the attorney fees award is barred by the equitable doctrines of waiver, laches, and unclean hands; and (3) he substantially complied with the stipulation's terms. We address these arguments in seriatim.

"Liquidated damages constitute a sum which a contracting party agrees to pay or a deposit which [a party] agrees to forfeit for *breach of some contractual obligation*." (*ABI, Inc. v. City of Los Angeles* (1984) 15 Cal.App.3d 669, 685.) The validity of contractual liquidated damages provisions is governed by Civil Code section 1671, subdivision (b). This section provides a liquidated damages provision "is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b).) The question whether a liquidated damages clause is invalid under Civil Code section 1671 is usually a legal one, subject to independent review. (*Gormley v. Gonzalez* (2022) 84 Cal.App.5th 72, 82.) Nevertheless, the factual basis for appellate consideration includes both undisputed facts and those facts determined by viewing conflicting evidence in the light most favorable to the trial court's ruling. (*Ibid.*)

5

Vladimir did not raise this argument in opposition to the RFO or in his reconsideration motion. Although parties may raise a pure question of law presented by undisputed facts for the first time on appeal (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259), we do not know any facts pertaining to the stipulation or whether these facts are disputed. Accordingly, resolution of this issue is not subject to de novo review.[2] Because Vladimir raised this argument, which involves factual issues, for the first time on appeal, it is forfeited. (*Rice v. Schmid* (1941) 18 Cal.2d 382, 385 [the validity of a liquidated damages clause involves questions of fact specific to the particular contract at issue]; *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [" ' "[I]ssues not raised in the trial court cannot be raised for the first time on appeal." ' "].)

Vladimir next argues the doctrines of waiver, laches, and unclean hands bar reinstatement of the attorney fees award. He also contends he substantially complied with the terms of the stipulation. Vladimir did not raise these arguments in opposition to Lilia's RFO. Instead, he raised them for the first time in his reconsideration motion but provided no explanation why he could not have raised these arguments in opposition to the RFO. A motion for reconsideration must be based on "new or different facts, circumstances, or law." (Code Civ. Proc., § 1008, subd. (a).) "Courts have construed [Code of Civil Procedure] section 1008 to require a party filing an application for reconsideration . . . to show diligence with a satisfactory explanation for not having presented the new or different information earlier." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839.) In his reconsideration motion,

---

2     The case Vladimir cites as analogous was decided on undisputed facts. (*Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969, 974.)

Vladimir did not cite any new law decided after the court entered the order on Lilia's RFO.

Additionally, in his points and authorities seeking reconsideration Vladimir states, "at the time the order was made, [he] did not have certain emails available for the hearing that he later found." If Vladimir could not find the emails for the RFO hearing, he should have brought the existence of these emails to the court's attention at the hearing and requested a continuance to produce them. Vladimir's declaration in opposition to Lilia's RFO, however, failed to mention the existence of these emails. The court properly denied reconsideration because Vladimir presented no new law or facts. (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1200 [trial court has no jurisdiction to reconsider a prior order based on " 'different facts' " or " 'different law' " in the absence of a satisfactory explanation for the failure to present them earlier]; *Hennigan v. White* (2011) 199 Cal.App.4th 395, 406 [facts known by a party when the original motion was pending do "not constitute 'new or different facts' for purposes of granting reconsideration"].)

Finally, Vladimir maintains the trial court should have sua sponte granted reconsideration. He asserts Lilia's RFO was confusing and did not clearly place him on notice that the May 2020 payment was the only payment at issue. Assuming, without deciding, that Lilia's RFO did not give Vladimir's counsel proper notice of what triggered the clause in the stipulation, Lilia's counsel stated at the hearing that the late May 2020 payment triggered the clause. Vladimir's counsel, however, never requested a continuance to muster additional evidence even though the court indicated it would continue the matter should Vladimir's counsel indicate he needed more time to dispute Lilia's exhibits. Although a trial court has the authority

7

to reconsider a prior order (*LeFrancois v. Goel* (2005) 35 Cal.4th 1094, 1104–1108), on this record, the court did not err when it failed to do so here.

**B.** ***The court did not abuse its discretion in modifying spousal support arrearage payments.***

The court reviewed Vladimir's "incomplete" income and expense declaration and tentatively increased the monthly spousal support arrearage payment from $250 to $1,250. After hearing argument from counsel, the court increased the monthly payment to $2,000.

Vladimir claims the court abused its discretion by arbitrarily modifying his spousal support arrearage payments without finding a material change of circumstances. He contends there was no material change in his earnings since entry of the original order, and the comparative inequality of lifestyles and income between himself and Lilia does not constitute a change of circumstances. Vladimir is correct that spousal support modification requires a material change of circumstances (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479), but he cited no authority that modification of spousal support arrearage payments require a change of circumstance and we found no such authority.

Rather, the determination of arrearages is "treated as a money judgment" enforceable under Family Code[3] section 290.[4] (See *County of Shasta v. Smith* (1995) 38 Cal.App.4th 329, 334.) For example, in *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, the family court ordered the husband to pay down arrearages of approximately $15,676 at the rate of $35

---

[3]    Undesignated statutory references are to the Family Code.

[4]    Section 290 provides: "A judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary."

per month. The appellate court rejected the wife's contention that the order constituted an "impermissible retroactive modification of a final order," explaining "[t]he order requiring [the husband] to pay down arrearages at the rate of $35 per month is not a retroactive modification of the arrears but rather an exercise of the court's equitable discretion to enforce its orders." (*Id.* at pp. 854–855 [relying on former Civ. Code, § 4380, the precursor to Fam. Code, § 290].) The court based this conclusion on the fact "[t]he order does not operate to forgive or compromise the outstanding debt nor does it preclude future modification or future enforcement efforts by way of execution, interception and the like." (*Everett*, at pp. 855–856.)

Vladimir also contends the court abused its discretion by ignoring his recent retirement and resulting inability to pay an increased monthly arrearages amount. We are not persuaded.

The party attacking a lower court ruling as an abuse of discretion bears the burden of establishing both an abuse of its discretion and a resulting miscarriage of justice. (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 500.) This is a " 'daunting task' confronting an appellant." (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1171.) Even in the absence of a responding brief, the appellant must affirmatively demonstrate prejudicial error. (*County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1068.)

In his responsive declaration, Vladimir argued he could not afford to increase his current $250 monthly arrearage payments. He claimed his 2021 income increased due to a lump sum retirement payment of $154,180.44. His counsel reiterated this at the hearing, stating the lump sum received was before taxes and part of the money went to pay taxes. This evidence shows the court knew about Vladimir's retirement, and nothing in the record

9

supports Vladimir's argument the court "ignored" his retirement status. Rather, the record suggests the court considered the other evidence presented and found Vladimir had the ability to make larger monthly arrearage payments despite his retirement.

The court found Vladimir's spousal support arrearages debt "has been outstanding for many, many years" and he had the ability to pay more than $250 a month toward this debt, especially in 2021 and 2022. Before it increased Vladimir's monthly payment from $250 to $2,000, the court noted Vladimir's discretionary spending on "luxury items" and found his March 2, 2023, income and expense statement to be unreliable because it was based on only six months of data rather than twelve months. It also found Vladimir "grossly underreported" his assets, remarking, "to represent to the Court that all of his property, real and personal, only amounts to $75,000 is just not credible." It found Vladimir's stated monthly income of $3,446 did not reflect his ability to pay more toward his arrearage payments and his claim of $7,743 in monthly expenses did not "jive" with his purported income and "raise[d] serious concerns in the Court's mind about the accuracy of his income and expense declaration." The court was "convinced [Vladimir] has much more money that is somewhere else that he has not declared on his income and expense declaration in addition to the $49,000, I think [$]49,991, which is sitting in the business account, not his personal account."

Vladimir argues, contrary to the trial court's findings, no substantial evidence shows he was evasive regarding his income and expenses. He claims the court misinterpreted his information, failed to recognize that his wife paid half of the monthly expenses, and the valuation of assets he presented was his half interest minus any debt encumbrances. In sum, he

10

claims the court's "suspicions were wholly unfounded and unsupported by the undisputed evidence in this case."

As a threshold matter, we review changes to arrearage payment orders for abuse of discretion. (*In re Marriage of Ramer* (1986) 187 Cal.App.3d 263, 273, superseded by statute on other grounds as stated in *In re Marriage of Romero* (2002) 99 Cal.App.4th 1436, 1440–1442 & fn. 3.; see also *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 598 [applying abuse of discretion standard to postjudgment order relating to child support arrearages].) Here, the court made a credibility determination regarding the accuracy of Vladimir's income and expense reporting. Essentially, Vladimir wants this court to reweigh the evidence and make a different credibility finding, which we cannot do. "The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed. This is the nature of factfinding. 'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' " (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) "In that role, the judge may reject any evidence as unworthy of credence, even uncontradicted testimony." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 979.) Because "[w]e do not judge credibility on appeal," "[a]n adverse factual finding is a poor platform upon which to predicate reversible error." (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175.)

However, although we may not reweigh the evidence on appeal, our review of the record support's the trial court's decision. The record discloses that in July 2021, Vladimir deposited $123,344.35 into his bank account which he represents was his after tax retirement distribution. Lilia's counsel argued he could have used these funds to pay off the arrearages he owed but instead spent the money on himself.

11

Moreover, Vladimir's credit card statements for nine months in 2022 show he spent a total of $4,695.89 for wine, for an average of $521.77 per month. During this same nine-month period, he spent a total of $8,176.48 on ski lessons, massages, nail salon services, plane tickets, entertainment, and vacations or hotels. This averages to $908.50 per month in discretionary spending. Other credit card statements for the 13-month period from December 2021 to August 2022 show he donated a total of $2,679 to political causes, for an average of $206.08 per month. In September 2021, he and his wife made a cash payment of $21,563.25 for a used boat and trailer. Their community home is valued on one internet site at $815,000, with a remaining mortgage balance as of November 2022 at $368,720. Lilia presented evidence showing the couple own two other homes, valued on one internet site at $478,500 and $1,266,700. Vladimir bought a new car in 2020, currently worth approximately $32,200, for which he has about $3,123 in equity. Vladimir also owns one jet ski, and he purchased another for which he is making monthly payments of about $211.

Vladimir's income and expense declaration averred his monthly income is $3,446, and his wife's gross monthly income is $2,519. Combined, their income is $5,965, which shows expenditures still exceed their joint income by $1,778. Nonetheless, as we detailed, they still enjoyed substantial monthly discretionary spending. Additionally, Vladimir and his wife own a considerable amount of real and personal property, and the court expressly rejected Vladimir's contention the value of his half of all assets amounted to only $75,000.

In summary, the family court considered the evidence, the arguments of counsel, and made a credibility determination that is binding on us. On

12

this record, we conclude the court acted well within its discretion when it increased Vladimir's monthly arrearage payment.

**C.** ***The court did not err in awarding Lilia attorney fees.***

Section 2030 provides for need-based attorney fees awards in marriage dissolution proceedings. An award under this statute requires findings on the propriety of such an award, including whether there is a disparity in access to funds to retain counsel and whether one party can pay for legal representation of both parties. (§ 2030, subd. (a)(2).) Lilia requested an order under section 2030 for Vladimir to pay $25,000 of her attorney fees. The court found a disparity in access to funds to retain counsel, stating:

> "But for the same reasons that the Court found that [Vladimir] has the ability to pay a portion of his arrearages for attorney's fees and spousal support forthwith and has the ability to make an increased payment of spousal support arrearages, that is that he does have access to funds, and when I compare that to really what is undisputed in this case that [Lilia] does not have access to funds of her own—she has to borrow from other people, and she is living on public assistance and living a very, very meager lifestyle—the Court finds there is a disparity in access to funds to retain counsel."

The court found Vladimir did not have the ability to pay all of Lilia's requested attorney fees but found he could contribute $10,000 toward her fees at a monthly rate of $250. Vladimir asserts the order for him to pay $10,000 toward Lilia's attorney fees pursuant to section 2030 constituted an abuse of discretion because the award was "unjust and unreasonable." He contends, like *In re Marriage of Keech* (1999) 75 Cal.App.4th 860 (*Keech*) and *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238 (*Alan S.*), the court failed to consider multiple factors affecting his financial picture, particularly his retirement, any realistic estimate of his actual income, and his expenses.

13

Vladimir's reliance on this authority is misplaced. In both cases, the court erred in large part by assessing ability to pay without taking into consideration the paying party's expenses and other obligations, including the ability to afford one's own counsel. (See *Keech, supra*, 75 Cal.App.4th at p. 868 ["the record does not sufficiently reflect, for example, any consideration of the husband's needs to pay his *own* outstanding legal fees during that period"]; *Alan S., supra*, 172 Cal.App.4th at pp. 254–255 [rejecting as a "truncated approach" an analysis that failed to take into consideration several of husband's monthly expenses and obligations, as well as his lack of additional assets].) As discussed above, the court considered Vladimir's monthly expenses, obligations, and legal fees but found the information he provided not credible. On this record, we cannot conclude the court abused its discretion by awarding Lilia $10,000 for her attorney fees.

## III.
## DISPOSITION

The order is affirmed.

IRION, Acting P. J.

WE CONCUR:

BUCHANAN, J.

KELETY, J.

14