Filed 9/16/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J.K., <br><br> A Person Coming Under The Juvenile Court Law. <br> ———————————————— <br><br> SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> S.K., <br><br>     Defendant and Appellant. | 2d Juv. No. B319316 <br> (Super. Ct. No. 21JV00074) <br> (Santa Barbara County) |

      This is yet another in a series of conflicting dependency appeals following a termination of parental rights in which the juvenile court and county welfare department failed to satisfy their expanded duties of initial inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C.S. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224.2).[1]  S.K. (mother), who

————————————————

[1] All undesignated references are to the Welfare and Institutions Code.

appeals the order terminating parental rights to her minor child J.K. with a permanent plan of adoption (§ 366.26), contends the juvenile court erred in finding ICWA did not apply because Santa Barbara County Child Welfare Services (CWS) and the juvenile court failed to ask J.K.'s extended family members about his possible Indian status.[2] Mother asks us to order that the matter be remanded so these duties can be satisfied.

We conclude the juvenile court errs in finding ICWA does not apply where, as here, the record does not establish that the expanded duty of initial inquiry set forth in section 224.2, subdivision (b), has been satisfied. We also conclude that a conditional affirmance with a limited remand for full satisfaction of the duties of inquiry and notice is necessary and appropriate because (1) CWS and the juvenile court have "an affirmative and *continuing* duty" to inquire into J.K.'s potential Indian status (§ 224.2, subd. (a), italics added); and (2) the record on appeal does not "affirmatively reflect[] that the protections intended to be afforded through the exercise of that duty have been provided." (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 325 (*Rylei S.*).) Accordingly we conditionally affirm the judgment and remand the matter for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Mother and A.A. (father, who is not a party to this appeal) are the natural parents of J.K., born in February 2021. CWS filed a section 300 petition alleging among other things that J.K. tested positive for drugs after his birth. CWS asserted in its detention report that ICWA did not apply because both parents

---

[2] "[B]ecause ICWA use the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn.1.)

had denied Indian ancestry and that mother's parental rights to J.K.'s half-sibling Z.V.K. had recently been terminated.

Both parents appeared at the detention hearing, denied Indian ancestry, and completed and filed the Parental Notification of Indian Status form (ICWA-020) to attest that they had no Indian ancestry. At the request of CWS's counsel, the court found ICWA did not apply and took judicial notice of the recent finding that ICWA did not apply in Z.V.K.'s dependency case. The court also took judicial notice of the reports in Z.V.K.'s case, which contained no indication that CWS had made ICWA-related inquiries of the maternal grandmother or the maternal relatives with whom Z.V.K. was placed.

J.K. was placed with non-relative extended family members. The court directed the parents to provide CWS with the names and addresses of all relatives to assist in investigating J.K.'s possible placement with an extended family member.

On March 30, 2021, the social worker reported that the paternal grandmother had stated she had no Indian ancestry. The social worker also contacted the paternal grandfather, father's and mother's siblings, and other maternal relatives, but there is no indication that she made any inquiries of them regarding J.K.'s possible Indian status. In the court's April 27, 2021 dispositional orders and findings — which were prepared on form JV-415 by CWS's attorney — the section that is supposed to identify the relatives the social worker asked about J.K.'s possible Indian status was blank.

At the conclusion of the jurisdiction and disposition hearing, father was offered reunification services but services were bypassed as to mother. We subsequently dismissed mother's appeal challenging the order bypassing services. (*Dept. of Social Services, County of Santa Barbara v. S.K.* (B311988, Aug. 31, 2021) [nonpub. opn.]). In referring to ICWA in its report

for the section 366.26 hearing, CWS stated that both parents had denied Indian ancestry and had each completed the requisite forms. At the conclusion of the six-month review hearing, the court terminated services as to father and set the matter for a section 366.26 permanency planning hearing. At the conclusion of the section 366.26 hearing, at which neither parent appeared, the court terminated parental rights to J.K. and selected adoption as the child's permanent plan.

## DISCUSSION

Mother contends the juvenile court erred in finding ICWA did not apply because the record does not reflect that CWS and the court satisfied their duties of inquiry under section 224.2, which required CWS to ask J.K.'s extended family members whether they had any information regarding the child's possible Indian status. As part of its affirmative and continuing duty of inquiry, the juvenile court was required to ensure that this information was presented and included in the record prior to making any ICWA finding. Mother asks us to remand the matter to the juvenile court for the limited purpose of allowing CWS and the court to satisfy these duties. We agree with the contention of error and shall issue a conditional affirmance with a limited remand.

## I.

We generally review ICWA findings for substantial evidence. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) Because the material facts at issue here are undisputed, "'we review independently whether ICWA requirements have been satisfied.'" (*In re J.L.* (2017) 10 Cal.App.5th 913, 918.)

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian

4

child from his or her family." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287 (*T.G.*).)[3] "Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).)

"ICWA significantly limits state court actions concerning out-of-family placements for Indian children. 'When ICWA applies, a state court may not . . . terminate parental rights to an Indian child unless the court is satisfied "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." [Citations.]'" (*T.G., supra*, 58 Cal.App.5th at p. 287.) "ICWA and the controlling federal regulations [citation] simply set a floor for minimal procedural protections for Indian children, their families and their tribes; the statute authorizes states to provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA. [Citations.]" (*T.G.*, at p. 288.) "In addition to significantly limiting state court actions concerning out-of-family placements for Indian children [citation], ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding [citations]." (*Rylei S., supra*, 81 Cal.App.5th at p. 316.)

---

[3] ICWA defines an Indian child as an unmarried individual under the age of 18 who is either a member of a federally-recognized Indian tribe or is eligible for membership in such a tribe and is the biological child of a member. (25 U.S.C.S. § 1903(4) & (8); § 224.1, subd. (a).)

Pursuant to ICWA and related California law, "[t]he [juvenile] court[ and] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be, or has been, filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) This duty applies to "[t]he court, court-connected investigator, . . . the county welfare department, . . . licensed adoption agency, adoption service provider, [and] investigator." (Cal. Rules of Court, rule 5.481.)

Section 224.2, subdivision (b), which went into effect on January 1, 2019, provides that "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, . . . extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or [the] Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include grandparents, aunts and uncles, siblings, brothers-in-law and sisters-in-law, nieces and nephews, first and second cousins, and stepparents. (25 U.S.C.S. § 1903(2); § 224.1, subd. (c).) Prior to the enactment of section 224.2, subdivision (b), the duty of initial inquiry could be satisfied by asking the child's parents whether the child is or may be an Indian child. (Former § 224.3.)

If information obtained through the initial inquiry gives the juvenile court or the social worker "reason to believe" the child is

6

or may be an Indian child, "the court[ or] social worker . . . shall make further inquiry regarding the possible Indian status of the child . . . as soon as practicable." (§ 224.2, subd. (e).) "The duty to develop information concerning whether a child is an Indian child rests with the court and the [county welfare department], not the parents or members of the parents' families." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 430.)

If the initial or further inquiry gives rise to a "reason to *know*" the child is an Indian child, notice of the proceedings must be given to the tribes of which the child may be a member or eligible for membership. (25 U.S.C.S. § 1912(a), italics added; §§ 224.2, subd. (f), 224.3.) "This notice requirement . . . enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*Isaiah W.*, *supra*, 1 Cal.5th at p. 5.)

## II.

Our Legislature unanimously enacted section 224.2, subdivision (b) after the California ICWA Compliance Task Force (the Task Force) – which is chaired by and comprised of tribal leaders and other tribal representatives and advocates — issued a report advocating for the new law (the Task Force Report). Among other things, the Task Force explained that "[w]hen parents are the sole target of the initial inquiry, it should be understood that there are a variety of reasons why relying on the parents does not necessarily protect the child's best interests, or the rights of the tribe. Parents may simply not have that information, or may possess only vague or ambiguous information. [¶] The parents or Indian custodian may be fearful to self-identify, and social workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law. Parents may even wish to avoid the tribe's participation or assumption of jurisdiction.' [Citation.]" (Cal.

7

ICWA Compliance Task Force, Rep. to Cal. Atty. Gen.'s Bur. of Children's Justice (2017) p. 28.)

Section 224.2, subdivision (b) makes clear that CWS's duty of initial inquiry required it to ask J.K.'s extended family members about J.K.'s potential Indian status. And the juvenile court, pursuant to its affirmative and continuing duty of inquiry (§ 224.2, subd. (a)), was required to ensure that CWS had satisfied its initial inquiry duties and that the record so reflect (see, e.g., *Rylei S.*, *supra*, 81 Cal.App.5th at pp. 322-323, and cases cited therein.) Those duties were not satisfied here. Other than the paternal grandmother, no information was sought from any of J.K.'s extended family members about his possible Indian status. Although the court took judicial notice of the prior finding that ICWA did not apply to J.K.'s half-sibling Z.V.K., that finding has no bearing on whether J.K. has Indian ancestry through his paternal relatives. Moreover, it appears from the record that CWS may have also failed to conduct a sufficient initial ICWA inquiry as to Z.V.K. Notwithstanding CWS's claim to the contrary on appeal, the record is thus insufficient to support the juvenile court's finding that ICWA did not apply.

### III.

Because the record demonstrates that CWS and the juvenile court failed to satisfy their statutorily-mandated duties under section 224.2, the matter must be remanded to remedy this error. We agree with our colleagues in *Rylei S.* that when, as here, a statutorily-mandated duty has not been performed, the matter must be remanded for satisfaction of the duty unless the record "affirmatively reflects that the protections intended to be afforded through the exercise of that duty have been provided." (*Rylei S.*, *supra*, 81 Cal.App.5th at p. 325.)

We also agree that the appropriate remedy is to issue a conditional affirmance with a limited remand. (*Rylei S.*, *supra*,

8

81 Cal.App.5th at pp. 326-327.) Although conditional affirmances are rare, they have previously been issued in various types of cases by both the appellate courts and our Supreme Court.[4] We issue such a disposition here because time is of the essence and a conditional affirmance provides the best opportunity for the error to be handled expeditiously without unduly prolonging the finality of the proceedings. Appeals from orders terminating parental rights are governed by section 395, so they "have precedence over all other cases in the court to which the appeal is taken." (§ 395, subd. (a)(1).) Moreover, the appealed order or judgment is not stayed while the appeal is pending. (*Ibid.*) With a conditional affirmance, the judgment remains in place on

---

[4] (See, e.g., *In re Z.O.* (2022) 79 Cal.App.5th 1, 11 [conditionally affirming judgment terminating parental rights and remanding for "the trial court [to] expeditiously hold proceedings and/or make findings regarding the need, or lack thereof, of a GAL [guardian ad litem] for mother as of the time the GAL was originally appointed"]; *People v. Magana* (2022) 76 Cal.App.5th 310, 328 [conditionally affirming order declaring appellant to be a sexually violent predator under Sexually Violent Predator Act (SVPA) and remanding to give him "an opportunity to raise an equal protection challenge to the SVPA's jury waiver provisions"]; *In re Marriage of Ramer* (1986) 187 Cal.App.3d 263, 278-280 [conditionally affirming modified judgment in marital dissolution case]; *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 835-836 [conditionally affirming order granting new trial limited to damages]; see also *Mercer v. Perez* (1968) 68 Cal.2d 104, 122, fn. 7 [noting that in *Jehl* the challenged order was "conditionally affirmed"].)

remand.[5] When a judgment is conditionally *reversed*, the judgment is *reinstated* on the date the underlying condition is satisfied. (See *People v. Gaines* (2009) 46 Cal.4th 172, 181-182.)[6]

Although parents subject to dependency proceedings have no duty to conduct the initial inquiry on the county welfare departments' behalf, they are obligated to provide any and all information they have regarding their extended family members and to apprise their attorneys and the social worker of any new information relating to extended family members or their knowledge regarding their children's possible Indian status. In this case, it appears the parents have already identified all of their relatives and the social worker has already had contact with them. If these extended family members all deny any knowledge that J.K. is or may be an Indian child, the error will be quickly corrected without disturbing or unduly prolonging the finality the judgment. Accordingly, a conditional affirmance with a limited

---

[5] Because a conditional affirmance does not "set aside" the judgment, the constitutional "miscarriage of justice" provision (Cal. Const., art. VI, § 13) does not apply.

[6] Although mother will have a right to appeal from any juvenile court order updating its ICWA findings on remand, that order will not be stayed pending any appeal. (§ 395, subd. (a)(1).) Moreover, we presume that counsel representing mother in such an appeal would only raise nonfrivolous claims on her behalf. We also note that with regard to ICWA notices parents in dependency proceedings may be sanctioned if they "knowingly and willfully falsif[y] or conceal[] a material fact concerning whether the child is an Indian child, or counsels a party to do so." (§ 224.3, subd. (e).)

10

remand will best serve J.K.'s interests in achieving permanency, stability, and the finality of these proceedings.[7]

The issuance of a conditional affirmance with a limited remand is a proper, appropriate, and necessary exercise of our supervisory authority over the juvenile courts. (See *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 635.) In enacting section 224.2, the Legislature expanded the county welfare departments' initial duty of inquiry to include asking the child's extended family members if they have any information indicating that the child is or may be an Indian child. The juvenile court has a duty to ensure that this information was presented to and considered by the court in making its ICWA findings.

CWS and the juvenile court also have an affirmative and *continuing* duty to inquire into J.K.'s potential Indian status. (§ 224.2, subd. (a).) Declining to issue a remand in these

---

[7] It has been suggested that the duty of initial inquiry set forth in section 224.2 may be difficult to satisfy. But the wisdom or workability of the statute is none of our concern. (*People v. Raybon* (2021) 11 Cal.5th 1056, 1084; *County of Sacramento v. Hickman* (1967) 66 Cal.2d 841, 854.) In any event, in interpreting statutes "[t]he court will apply common sense to the language at hand and interpret the statute to make it workable and reasonable." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122.) County welfare department employees conducting the initial inquiry compelled by section 224.2 need not undergo overly voluminous record searches, attend family reunions, conduct stakeouts, or search Ancestry.com. Nor are they required to interview young children or other extended family members who would not be expected to have any information regarding the child's Indian status. They merely need to make *reasonable* and diligent efforts to conduct the required inquiry and report those efforts and the results thereof to the court.

circumstances would effectively absolve the juvenile court and CWS of their statutorily-mandated duties under section 224.2. A duty that is unenforceable is but a chimera.

We cannot interpret statutes in a manner that renders language in the statute a nullity. (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039.) Moreover, our Supreme Court has held it is improper for courts to "'frustrate the creation of a statutory duty by refusing to enforce it through the normal judicial means.'" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 869.) Because the record does not affirmatively reflect that the protections intended to be afforded through the exercise of the statutory duties set forth in section 224.2 have been provided (*Rylei S.*, *supra*, 81 Cal.App.5th at pp. 316-317), and CWS and the juvenile court each have a *continuing* obligation to satisfy those duties, a conditional affirmance and limited remand for CWS and the juvenile court to satisfy their respective duties is required.

## III.

Our Supreme Court has made clear that ICWA issues may be raised for the first time by parents appealing the termination of their parental rights. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 9.) The court reasoned: "We are mindful of the child's need for a permanent and stable home, and we agree that a swift and early resolution of ICWA notice issues is ideal. But the federal and state statutes were clearly written to protect the integrity and stability of Indian tribes *despite the potential for delay in placing a child.* The [relevant] provisions . . . recognize the importance of properly determining a child's Indian status even when a dependency proceeding has progressed beyond the initial stages. [Citations.]" (*Id.* at p. 12, italics added.).

The court went on to note that ICWA and related California law give tribes the right to intervene at any point in the

dependency proceedings, even after parental rights have been terminated. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 13, citing 25 U.S.C.S. § 1911(c); §224.4.) The court also recognized that the relevant law, "considered as a whole, make[s] clear that Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children. [Citation.] ICWA's notice requirements are 'intended to protect the interests of Indian children and tribes despite the parents' inaction.' [Citations.]" (*Ibid.*)

Of course, juvenile court judges and county welfare departments have no duty to give any such notice unless there is a "reason to know" the child is an Indian child. But the determination of this "reason to know" presumes that the county welfare department has satisfied its duties of initial inquiry under section 224.2, and that the juvenile court has correctly found so based on evidence in the record. This initial inquiry may be the source of knowledge giving rise to a "reason to know." As we have noted, the statute expressly recognizes that a child's extended family members may have information giving rise to not merely a "reason to believe" the child is or may be an Indian child, but a "reason to know" the child is an Indian child. (§ 224.2, subd. (d)(1).)

If the statutorily-mandated duties of inquiry are not satisfied, the court's finding that there is no "reason to know" the child is an Indian child is fatally uninformed. "'[T]he tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending.' [Citations.]" (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 13-14.) Here, one can merely speculate that a proper inquiry under section 224.2 would not have uncovered information giving rise to a "reason to know" that J.K. is an Indian child.

13

In light of these principles, we are not persuaded by CWS's assertion that remanding the matter for satisfaction of the duties set forth in section 224.2 would be contrary to J.K.'s interests in permanency and stability. Moreover, CWS has contributed to the delay in the finality of these proceedings by opposing the appeal rather than stipulating to a remand. J.K.'s interests are best served by a full resolution of all ICWA-related issues, and "Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children." (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 12-13.)

Parents who are committed to reunifying with their children must also be committed to acting in the children's best interests. But parents are not likely to know the law unless their attorneys tell them. The juvenile court is also reasonably expected to be currently apprised of the law, particularly as it relates to the court's statutorily-mandated duties. Here, however, the attorneys and juvenile court judge either were unaware of the provision or simply overlooked it.

It is also clear that counsel for CWS *now* knows that CWS failed to satisfy its continuing duty of inquiry under section 224.2. As we have noted, this dereliction of duty is not in J.K.'s best interests and can likely be rectified on remand with only a minor delay in the proceedings.

## DISPOSITION

The order terminating parental rights is conditionally affirmed. The matter is remanded to the juvenile court for the limited purpose of allowing CWS and the juvenile court to satisfy their statutorily-mandated inquiry and notice duties under section 224.2 by, among other things, soliciting information (or making reasonable efforts to do so, supported by a showing of reasonable and due diligence) from J.K.'s extended family members regarding the child's possible Indian status. All such

14

duties shall be promptly performed and completed with reasonable and due diligence.

After satisfying its initial inquiry duties in accordance with section 224.2, subdivision (b), CWS and the social worker shall file a report with the juvenile court (with any necessary attachments) setting forth the details and results of its inquiry, its reasonable and diligent efforts to contact the extended family members identified by the parents or any other individuals identified by the parents or extended family members who might be reasonably expected to have information about J.K.'s potential Indian status, and its findings and recommendations regarding whether ICWA applies or may apply.

If the report and its attachments demonstrate that CWS has satisfied its duty of initial inquiry, the court shall so find and then proceed to find whether this new information gives the social worker or the court a "reason to believe" J.K. is or may be an Indian child, or a "reason to know" J.K. is an Indian child. If the court concludes there is still no "reason to believe" that J.K. is or may be an Indian child, it shall enter a new order finding that ICWA does not apply and the judgment (order terminating parental rights) shall become final as of that date.

If the court finds that the new information gives rise to a "reason to believe" that J.K. is or may be an Indian child, the court shall find that ICWA may apply and further inquiry shall be conducted in accordance with section 224.2, subdivision (e). If such further inquiry dispels the reason to believe that J.K. is or may be an Indian child, the court shall enter a new order finding that ICWA does not apply and the judgment (order terminating parental rights) shall become final as of that date.

If the information obtained during the initial or further inquiry gives the court or the social worker a "reason to know" that J.K. is an Indian child, the court shall ensure that proper

15

notice of the proceedings is sent in accordance with section 224.2, subdivision (f) and section 224.3.  If the court subsequently finds in accordance with section 224.2, subdivision (i)(2) that ICWA does not apply, it shall enter an order to that effect and the judgment shall become final as of that date.

If on remand a tribe informs the court that J.K. is a member of the tribe or eligible for membership and that the tribe intends to intervene in the proceedings, the court shall find that ICWA applies and enter an order to that effect.  If the court issues such an order, the judgment (order terminating parental rights) is reversed as of that date.  If the judgment is so reversed, the court shall promptly hold a new section 366.26 hearing in compliance with ICWA and related California law.

CERTIFIED FOR PUBLICATION.

PERREN, J.[*]

I concur:

GILBERT, P.J.

_____

[*] Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

GILBERT, P.J.

I concur.

I do not support the rigid application of ICWA promulgated by *In re Rylei S.* (2022) 81 Cal.App.5th 309.  Nevertheless, I believe a limited remand here is appropriate for the reasons stated in *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744, readily obtainable information that is likely to bear on whether the child is an Indian child.

I agree that the result here is appropriate.  I take issue, however, with footnote 5 in the majority opinion.  (*Ante*, p. 10.)  In my view the perceived differences between a conditional affirmance and a conditional reversal do not determine whether there is a "miscarriage of justice."  (Cal. Const., art. VI, § 13.)  Juliet's oft-quoted comments about a rose is apt.

I also wish to caution that against the backdrop of ICWA what is of paramount concern is the best interest of the child.  (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 673.)  ICWA consideration is important, but it does not supersede the child's best interest.  (Welf. & Inst. Code, § 202, subd. (d).)

CERTIFIED FOR PUBLICATION.

GILBERT, P.J.

YEGAN, J., Dissenting:

I respectfully dissent. The continuing appellate controversy which is now dominating the advance sheets concerns the Indian Child Welfare Act (ICWA) and the appropriate standard of appellate review. Strict and inflexible ICWA enforcement at the Court of Appeal level strikes at the heart of two basic aspects of the California Constitution: First, the oath of judicial office, which directs justices to "support and defend" the California Constitution, not a statute. Second, reversal of a superior court judgment only where an error is prejudicial, i.e., where it is reasonably probable that a different result will obtain upon reversal. There is no California Supreme Court case which has held that the ICWA error is "structural error." And I doubt that such an opinion could be written given the Supreme Court rules on when this extraordinary appellate rule can be applied.

The primary and overarching dispute to be decided in dependency cases is between the parent or parents of the child or children, and the State of California, whose job it is to secure the safety and well-being of children. The caption of a dependency case is telling. It does not mention an Indian tribe. An Indian tribe is neither a party nor a real party in interest in a dependency case.

I entertain a real doubt that the cases automatically reversing a judgment because of an ICWA violation, accomplish the goal of ICWA. The Legislature has not purported to declare that ICWA error is always prejudicial. I doubt that it could lawfully do so. And I am fairly certain that the inevitable delay caused by ICWA reversals is counterproductive. Childhood is not "stayed" while the superior court revisits ICWA upon a Court of Appeal order to do so. Dependent children need the stability of a

superior court final order and "new" parents now.  New parents are presumptively ready and able to shepherd children in a safe and caring environment.  It is hard enough for a child to grow up in a functional family environment.  It is harder still in a non-functional family environment.  A dependent child cannot, and should not, have to wait because of the delay caused by reversals of judgments which, in the vast majority of cases, will not result in placement with an Indian family.  The primary goal of dependency court is the safety and well-being of children.  Any other goal, including an ICWA goal, is secondary.

The various districts and divisions of the Court of Appeal have conflicting approaches to how this troublesome issue is to be treated on appeal.  In my view, the issue is straight forward.  The Court of Appeal does not reverse a superior court judgment based upon a silent record, i.e., the absence of Indian ancestry proof.  Error by the superior court is never presumed.  Error by the superior court must be affirmatively shown.  This is true even if the child welfare investigators could have undertaken a more robust investigation concerning Indian heritage.  Any investigation could always be more robust.  And the trial court has a duty to monitor that inquiry.  That monitoring too, can always be more robust.  Perhaps there should be a rule requiring an ICWA objection in the superior court before a parent can raise and ICWA issue on appeal, and perhaps the superior court should develop a form showing compliance with the search for Indian ancestry listing all of the parents' extended family which have been contacted.  Such a checklist would hopefully put an end to needless litigation at the Court of Appeal.

The goal of ICWA is laudable.  But, the late Justice Macklin Fleming would ask: How much time, money,

2

investigation efforts, attorney time, and judicial resources is to be spent trying to achieve "perfect justice?"

The Court of Appeal is tasked to affirm a judgment unless there has been a miscarriage of justice, in which case we reverse. There is no showing of an actual miscarriage of justice in this case. There isn't even a suggestion that upon further inquiry, there may be some evidence of Indian ancestry. If there were, I would vote to reverse. Of course, upon further investigation, there may be proof that there is, or is not, evidence of Indian ancestry. And even if there is some proof of Indian ancestry, that does not automatically mean that a child will be placed with an Indian family. This is all speculative. So, should there be a reversal, conditional reversal, or "conditional affirmance," based upon speculation? My answer now is, No.

The oath of judicial office does not say that appellate courts have a duty to support and defend a statute. This is a glaring omission in the oath and the only inference that can be drawn is that the judicial oath of office is not directed to a statute. Of course, we strive to uphold the letter and spirit of a statute. And, we do so in almost every case. But, the Constitution takes precedence over a statute. This is not a novel statement. Any negligent violation of statute in almost any context does not inexorably result in reversal. Such a violation, an error, must be prejudicial within the meaning of the California Constitution to warrant reversal of a judgment.

The Court of Appeal should not continue to slavishly adhere to the ICWA rules at the expense of the California Constitution. There is no ICWA exception to the California Constitution. As indicated, we strive to follow any statute, including the ICWA statute. And, at least in Division Six of the Second Appellate District, we have always and strictly applied

3

ICWA and reversed upon a showing of "ICWA error." That time, for me, is now over. Rather than championing the rights of an Indian tribe, we should be championing the rights of a dependent child.

The prior Court of Appeal opinions, and the majority opinion here, does not solve this administration of justice problem. The new opinion authored by Justice Hoffstadt, *In re Dezi C.* (2022) 79 Cal.App.5th 769, does solve the problem. This scholarly opinion is consistent with the oath of office, follows the Constitutional mandate of when and when not to reverse a judgment, and is a pragmatic solution for the ICWA issue at the Court of Appeal level. It dictates that we affirm in this case.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.